IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LEONARD A. SAYLES, Jr.,

      Movant,

v.                         Case No. 2:05-cv-0122
                             Case No. 2:99-cr-00198-05

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant, Leonard Andrew Sayles, Jr.'s (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket sheet document # 535). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 9, 2000, Defendant was named in four counts of a 12-count superseding indictment. (# 42). Defendant was charged with one count of conspiracy to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846 (Count One), one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count Seven), one count of aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Ten), and one count of using, carrying or

possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Eleven).   Attorney Donald L. Stennett was appointed to represent Defendant on those charges.

On April 7, 2000, Defendant, by counsel, filed a motion to suppress a statement that Defendant allegedly made while he was in custody about his possession of a firearm for protection.  (# 109). However, because plea negotiations were on-going, Mr. Stennett cancelled a pre-trial hearing on the motion to suppress, and the motion was subsequently denied without prejudice by the presiding District Judge on April 17, 2000.  (# 125).  The April 17, 2000 Order continued the trial date, set a new pre-trial motions hearing for May 8, 2000, and noted that the defendants could renew previously submitted motions or any new motions by that date. (Id.) Ultimately, no plea agreement was reached and Defendant went to trial before a jury on July 11-13, 2000.  Mr. Stennett did not renew the motion to suppress prior to trial.

Rather, Mr. Stennett lodged an objection to the admission of evidence concerning the statement during the trial testimony of Detective T.C. Bramlee.   Mr. Stennett argued that Defendant's custodial statement was involuntary.   A hearing on the issue was conducted outside the presence of the jury, and the district court ultimately concluded that Defendant was read his Miranda rights, that he understood those rights, and that the statement was

voluntary.  Thus, the statement was deemed admissible.  (# 314 at 57-65).

During the trial, a number of law enforcement officials testified about their involvement in an investigation and surveillance of drug distribution activities at the City Park apartment complex located on Roseberry Circle in Charleston, West Virginia.  Detectives Bramlee and Napier testified that, on January 28, 1999, they were conducting video surveillance of the area, and observed Defendant and others engage in "hand to hand" transactions involving substances that appeared to be cocaine base, or "crack." The officers testified that they videotaped Defendant attempting to give money to another co-defendant and carrying "a plastic bag with a [large amount of] white tan substance up against his shirt."  The videotape was admitted into evidence at the trial.  Based upon the record before the court, it appears that Defendant was not arrested on January 28, 1999.

On September 22, 1999, officers stopped a white Mustang, which was driven by Kennele Groome, and in which Defendant was a passenger.  Both Groome and Defendant were placed under arrest. Officers recovered a .38 caliber pistol from underneath the driver's seat, which Groome admitted was his, and a Lorsin .380 pistol from underneath the front passenger seat, where Defendant was sitting.  (# 315 at 129-130).  The arresting officers also recovered digital scales from the seat where Defendant had been

riding.  (# 314 at 50-53).

During a search of Defendant's person at the police station, officers recovered 4.01 grams of crack.  (<u>Id.</u> at 54-56). Additionally, one of the officers who processed Defendant at the police station testified that Defendant had admitted that the .380 pistol found underneath his seat was his, and that he carried the gun because "some of his boys . . . were getting shot." (<u>Id.</u> at 70-71).

The United States also offered the testimony of an expert witness who testified that the possession of digital scales and crack amounts greater than three and a half grams is indicative of distribution, not mere use.  (# 315 at 163-164).  The United States also offered the testimony of several named co-defendants who pled guilty to various related drug charges.  Arbera Ross[1] testified that he had sold cocaine base to Defendant "[a]bout ten times . . . from a hundred grams and the rest would be ounces" and that he "fronted" crack to Defendant "a couple of times." (<u>Id.</u> at 179-182).  Marvin Garrett testified that he and Defendant had cooked cocaine into crack "numerous times . . . [f]or resale on the streets." (<u>Id.</u> at 198).  Garrett further testified that he received "a hundred dub" or "a couple of grams of crack from Sayles

---

[1]  Throughout the record, Mr. Ross' name is spelled several different ways.  The spelling used here is the same as that used in the docket sheet for Mr. Ross' criminal case and it shall be used herein, even where a different spelling was used.

4

"[a]bout ten or more times" and had observed Sayles distributing crack to others "[m]ore than twenty times" from 1995 to 1999. (<u>Id.</u> at 199-200).

Defendant did not present any evidence in his defense. Defendant was ultimately convicted on all four counts in which he was named in the superseding indictment. (# 177). A Judgment Order on the jury verdict was entered on July 13, 2000. (# 180).

At sentencing, Arbera Ross and Marvin Garrett again testified on behalf of the United States concerning their drug activities involving Defendant. Ross testified that over the course of a two-year period, he supplied Defendant with "around ten ounces" of crack. (# 287 at 287). He further testified that, on January 28, 1999, he saw Defendant with an additional 100 grams of crack. (<u>Id.</u> at 288-289). However, Ross stated that he had never been present when Defendant distributed crack to others. (<u>Id.</u> at 289). Ross also stated that he had never seen Defendant with a gun. (<u>Id.</u>)

Garrett testified that, since 1995, he had seen Defendant in possession of "about 20 ounces" of crack and that the most he had seen Defendant possess at one time was 50 grams. (<u>Id.</u> at 297-298). Garrett further testified that he saw Defendant with a firearm in 1999, and that Garrett had given that gun to Defendant. (<u>Id.</u> at 299-300). Another government witness, Dashawn Williams, also testified that he had sold Defendant a nine millimeter weapon. (<u>Id.</u> at 293-296).

5

Defendant called Detective T.C. Bramlee as a witness. Detective Bramlee confirmed that, during three separate interviews of Marvin Garrett, Garrett never told him that he had seen Defendant cooking crack. (Id. at 306-308). On cross-examination, Assistant United States Attorney John Frail confirmed with Detective Bramlee that there had been another interview prior to Garrett's testimony at trial, where Detective Napier, not Detective Bramlee, was present, and that Detective Bramlee did not know what was said during that interview. (Id. at 308-309).

The government then proffered that Detective Napier, if called, would have testified that he was present at a meeting with Marvin Garrett, days before Defendant's trial, in which there was a discussion about Defendant cooking crack. (Id. at 310-311). The government further proffered on behalf of the defense that it was Detective Napier's opinion that Defendant's role in the conspiracy was somewhere less than Robert Jared Smith, but greater than John Clements. (Id.)

The presiding District Judge found that 30 ounces, or somewhere between 940 and 960 grams of cocaine base was attributable to Defendant. (Id.) Based upon that determination, the court determined that Defendant's base offense level was 36. The court then applied a two-level enhancement for Defendant's role in the offense, pursuant to section 3B1.1(C) of the United States Sentencing Guidelines. Thus, Defendant's total offense level was

38, and his criminal history category was I.  Consequently, his Guideline sentencing range was 235-293 months on Counts One, Five and Ten.  (Id. at 311).  On Count Eleven, Defendant was subject to a consecutive 60-month sentence.  (Id. at 312).  Additionally, because of the statutory maximum of 20 years on Counts Seven and Ten, Defendant's Guideline sentencing range on those counts was 235-240 months.  (Id. at 312).

The presiding District Judge sentenced Defendant to a term of 235 months on Counts One, Seven and Ten, and a consecutive term of 60 months on Count Eleven, for a total sentence of 295 months, to be followed by a five-year term of supervised release on Count One, and a three-year term of supervised release on the other counts. (Id. at 313-314).  Defendant was also ordered to pay a $5,000 fine, with no interest, and a $400 special assessment.  (Id.)  A Judgment was entered on November 22, 2000.  (# 248).

Defendant appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit.  On appeal, Defendant, who was then represented by John G. Hackney, Jr., challenged the two-level enhancement for a leadership role in the offense, the amount attributed to him as relevant conduct, and the sufficiency of the evidence on his firearm conviction.

On July 10, 2002, the Fourth Circuit affirmed Defendant's convictions and the district court's determination of his relevant conduct, but found that the enhancement of Defendant's sentence for

a leadership role was in error.  Accordingly, the Fourth Circuit vacated Defendant's sentence and remanded the case to the district court to re-sentence Defendant without the leadership role enhancement.  United States v. Sayles, 296 F.3d 219 (4th Cir. 2002).

While Defendant was awaiting re-sentencing, he filed a Motion for a New Trial, based upon newly-acquired evidence of misconduct by Trooper Todd McDaniel of the West Virginia State Police Crime Lab concerning drug analysis.  (# 425).  That motion was denied by the district court orally at the re-sentencing hearing on January 6, 2003 (# 470 at 8), and in a written Memorandum Opinion on January 7, 2003.  (# 446).

Defendant was re-sentenced on January 6, 2003, after the preparation of a revised Presentence Investigation Report.  At the re-sentencing, the court took no additional evidence.  The court sustained Defendant's objection to the imposition of a leadership role enhancement (# 470 at 4), but denied Defendant's request for a downward departure based upon Defendant's status as a juvenile at the time the conspiracy allegedly began, and his positive record while incarcerated.  (Id. at 4-8).

Without the leadership role enhancement, Defendant's Guideline sentencing range was 188-235 months on Counts One, Seven and Ten. (Id. at 9).  When offered his right of allocution, Defendant attempted to challenge the court's determination of his relevant

8

conduct.   The presiding District Judge held that, because the Fourth Circuit had affirmed the district court's determination of Defendant's relevant conduct, that issue was not before the court on re-sentencing.   The court further stated:

> If you determine to appeal the Court's sentencing, you can raise that issue again with the Court of Appeals, but I am bound to follow the decision of the Court of Appeals, plus I am more than satisfied from the evidence that I was presented at the time that the relevant conduct is correct and conservatively calculated.

(Id. at 13).

The presiding District Judge re-sentenced Defendant to 188 months on Counts One, Seven and Ten, followed by a consecutive 60-month sentence on Count Eleven.   (Id. at 15).   The court also removed Defendant's previously imposed fine, due to Defendant's intervening child support obligations.   (Id.)   A new Judgment was entered on January 7, 2003.   (# 447).

On January 14, 2003, Defendant filed a Notice of Appeal of the Judgment of the district court on his re-sentencing.   (# 454).   In the second appeal, Mr. Hackney challenged the denial of Defendant's Motion for a New Trial, and Defendant filed motions to supplement the record with a pro se brief challenging the quantity of drugs attributed to him as relevant conduct.   Mr. Hackney also filed a supplemental pleading on the issue of drug quantity error.

On February 17, 2004, the Fourth Circuit affirmed the denial of Defendant's Motion for a New Trial.   United States v. Sayles, No. 03-4093, 87 Fed. Appx. 884, 2004 WL 298413 (4th Cir., Feb. 17,

9

2004)(unpublished).   The Fourth Circuit further held:

> Sayles also filed motions seeking to submit a pro se
> supplemental brief challenging the quantity of drugs
> attributed to him as relevant conduct.  Although we grant
> Sayles' motions, we decline to address this issue because
> it is beyond the scope of our remand.   <u>United States v.</u>
> <u>Bell</u>, 5 F.3d 64, 66 (4th Cir. 1993).

(<u>Id.</u>)

Defendant then filed the instant section 2255 motion on
February 14, 2005.  (# 535).  On December 6, 2005, the undersigned
granted Defendant's motion to amend his section 2255 motion (# 539)
and his two motions to supplement the section 2255 motion with
additional authority (## 540 and 541).  (# 560).  The grounds for
relief as alleged in Defendant's amended section 2255 motion are as
follows:

1.   Ineffective assistance of counsel during pre-trial
     when counsel failed to properly challenge the
     admissibility of Defendant's post-arrest statement
     in a motion to suppress.  Defendant asserts that
     the failure to resolve the suppression issue prior
     to trial prevented him from entering a knowing,
     voluntary and intelligent plea to the government's
     plea offer.

2.   Ineffective assistance of counsel on appeal because
     counsel failed to challenge the quantity of drugs
     attributable to Defendant for sentencing purposes.

3.   The District Court erred in sentencing Defendant
     beyond his prescribed statutory maximum based upon
     facts not found by a jury or admitted by Defendant.

4.   Ineffective assistance of counsel on appeal for
     failure to challenge the sufficiency of the
     evidence for Defendant's conspiracy conviction.

5.   Ineffective assistance of counsel on the basis that
     his trial counsel labored under an actual conflict

10

of interest during pre-trial stages.

Because each of these claims lacks merit, the undersigned has not required the United States to respond to the amended motion. The undersigned will address each of these issues in turn.

## ANALYSIS

### A.   TIMELINESS OF MOTION

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996,(hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

> (1) the date on which the judgment on conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable to cases on review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Defendant's conviction became final on or about May 17, 2005, when the time for filing a petition for a writ of certiorari in the United States Supreme Court concerning the

11

rulings in his second appeal expired.  Therefore, the undersigned proposes that the presiding District Judge **FIND** that Defendant's section 2255 motion filed on February 14, 2005 was timely.

### B.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Defendant has raised several claims of ineffective assistance of counsel.  The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel.  The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's

12

unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Using this standard, and based upon all of the evidence of record, the court will address the merit of each of the allegations concerning ineffective assistance of counsel in the order they were presented by Defendant.

1. **Counsel's conduct concerning the motion to suppress Defendant's post-arrest statement and the effect on Defendant's decision not to plead guilty.**

In Ground One of his Memorandum of Law, Defendant asserts:

[Defendant] asserts that counsel rendered ineffective assistance, when counsel, [unbeknownst] to [Defendant], cancelled a pretrial hearing to suppress a post-arrest statement allegedly made by [Defendant], upon an erroneous presumption, that a plea agreement would be consummated with the government.  And, subsequently, counsel further rendered ineffective assistance when he misadvised [Defendant] that the only challenge which could be made to the admissibility of the aforementioned statement, would occur during trial in the event the Government attempted to introduce such.  Thus, resulting in [Defendant] rejecting the Government's pretrial plea offer of ten years imprisonment, and proceeding to trial.

(# 536 at 9).

In Ground Five of his amended motion, Defendant asserts that Mr. Stennett "labored under an 'actual conflict of interest'" when, after he cancelled the hearing on the motion to suppress, and the plea negotiations fell through, he advised Defendant that the only way to challenge Defendant's statement would be to proceed to trial.  (# 539 at 5-6).  In support of this claim, Defendant relies

13

upon language in Justice Marshall's concurrence in part and dissent in part in <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 356 n.3 (1980), stating, "[a]n attorney has an actual . . . conflict of interest when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" (# 539 at 6).

Defendant asserts that, during a pre-trial interview, Mr. Stennett informed him that the government intended to introduce evidence that Defendant told the arresting officers that he possessed the weapon found underneath his seat at the time of his arrest for protection because "some of his boys had been shot." Defendant denied making the statement to police, and asserts that he told Mr. Stennett that he was under the influence of drugs and alcohol at the time of his arrest, and that he was not advised of his rights prior to talking to the police. Thus, Defendant states that he requested that Mr. Stennett challenge the admission of the statement. Mr. Stennett filed a motion to suppress the statement on April 7, 2000.

Defendant claims that the government offered him a plea of five years imprisonment on Count Ten (possession with intent to distribute) followed by a consecutive[2] term of five years imprisonment on Count Eleven (the firearm charge), for a total of

---

[2]   Defendant's memorandum of law states "followed by a concurrent term," but it appears that Defendant meant to say "consecutive."

ten years of imprisonment.[3]   (# 536 at 10).

Defendant further asserts that he:

> informed counsel to make a counter-offer to the
> Government of a sentence of ten years, absent the weapon
> count. If not accepted, would proceed to trial. Again,
> [Defendant] expressed to counsel that he wanted to
> challenge the admission of the alleged statement from
> being used at trial. Counsel assured [Defendant] that
> each of his concerns would be dealt with appropriately.

(Id. at 11).   Apparently, while the plea negotiations were on-going, Mr. Stennett cancelled a hearing on the motion to suppress the alleged statement.

Defendant further asserts that, after the government rejected his counter-offer, Defendant again expressed his desire to challenge the alleged statement he made to the police, and that Mr. Stennett informed him that "such a challenge would have to be made during trial . . . ." (Id.) Mr. Stennett did object to the admission of evidence concerning the statement during the trial, and a hearing on the matter was conducted outside the presence of the jury. Ultimately, the district court overruled the objection and the evidence was admitted. (# 314 at 57-65).

If Defendant is claiming that Mr. Stennett provided ineffective assistance of counsel because he cancelled the hearing

---

[3] The undersigned questions the credibility of this alleged plea offer, noting that the maximum sentence to which Defendant could have been exposed on Count Ten was 20 years, and the sentencing range would have been largely dictated by the then-mandatory United States Sentencing Guidelines. Accordingly, the undersigned finds it difficult to believe that the government would have made any length-determinative sentence offers.

on the motion to suppress and failed to renew the motion prior to trial, Defendant cannot demonstrate that he was prejudiced because Mr. Stennett made the motion at trial, and a hearing was held outside the presence of the jury.

If Defendant is claiming that the decision to challenge the statement at the beginning of the trial, rather than at an earlier pre-trial hearing, presented Mr. Stennett with an actual conflict of interest, such a claim also lacks merit. It is clear from the record that the government's plea offer required Defendant to plead guilty to the firearm charge. Defendant rejected the offer, allegedly because he wished to challenge the alleged statement about possession of the firearm, in hopes of damaging the government's case on the firearm charge.

Mr. Stennett's cancellation of the pre-trial hearing was reasonable in light of the on-going plea negotiations. Furthermore, once the plea negotiations broke down, Mr. Stennett's decision to challenge the statement at the beginning of the trial was a matter of strategy that is virtually unchallengeable. Simply because Defendant now, in hindsight, claims that he would have made a different strategic choice about when to challenge the statement, does not render his counsel's decision constitutionally ineffective.

If Defendant is asserting that the failure to pursue the motion to suppress before trial resulted in his decision not to

16

accept the government's plea offer, Defendant cannot show the requisite prejudice because such a decision would not have affected his ultimate sentence.

It is clear from Defendant's brief that the government insisted that Defendant plead guilty to the gun charge (Count Eleven) as part of his plea agreement.  Had Defendant pled guilty to Counts Ten and Eleven, as he claims he would have, but for Mr. Stennett's error, he would have been subject to a 20-year maximum sentence on Count Ten (possession with intent to distribute), followed by a consecutive 5-year sentence on Count Eleven.  The district court would still have made findings of fact concerning the drug quantities that made up Defendant's relevant conduct, and in all likelihood, he would have been given the same sentence.

Based upon the evidence of record, Defendant did not seek to enter a guilty plea at anytime after the district court's ruling on the admissibility of Defendant's statement and, at any rate, he has not demonstrated that his sentence would have been any different had he pled guilty.  Thus, he cannot show any prejudice from his counsel's decision.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that, but for his counsel's alleged unprofessional error, there is a reasonable probability that the outcome of his proceedings would have been different.

**2.    Failure of appellate counsel to challenge the quantity of drugs attributable to Defendant during second appeal.**

In Ground Two of his amended motion, Defendant asserts that, in his appeal following his re-sentencing, despite Defendant's request to do so, his counsel, John Hackney, failed to challenge the drug quantities attributed to him at his re-sentencing.  A brief explanation of the procedural history on this point will be helpful.

In Defendant's first appeal, he challenged the quantity of controlled substances attributed to him as relevant conduct.  The Fourth Circuit rejected that argument, holding as follows:

> Sayles' contention that the district court erred in determining the quantity of controlled substances attributable to him as relevant conduct clearly fails. The district court attributed to Sayles 940 to 960 grams of crack.  Sayles argues that Ross' testimony on this point at trial conflicted with his testimony at Sayles' sentencing hearing.  Even if we agreed, Garrett's consistent testimony at trial and at sentencing provided evidence fully supporting the threshold quantity of crack needed to sustain the sentence.  *See United States v. Uwaeme*, 975 F.2d 1016, 1018 n.8 (4th Cir. 1992).

(# 410 at 12 n.3).  The Fourth Circuit, however, ultimately remanded Defendant's case for re-sentencing based upon the district court's error in applying a leadership role enhancement.  (Id.)

At Defendant's re-sentencing hearing on January 6, 2003, no new evidence was presented to the district court.  However, during his allocution, Defendant objected to 20 ounces of crack attributed to him through the testimony of Marvin Garrett.  (# 470 at 11).  The district court held as follows:

18

> As a matter of fact, Mr. Sayles, the Court of Appeals has
> concluded that issue and there was more than adequate
> testimony at trial and at sentencing in the case to
> implicate you in very close to 950 grams of cocaine base
> and the Court will not change that determination.
>
> If you determine to appeal the Court's sentencing,
> you can raise that issue again with the Court of Appeals,
> but I am bound to follow the decision of the Court of
> Appeals, plus I am more than satisfied from the evidence
> that I was presented at the time that the relevant
> conduct is correct and conservatively calculated.

(<u>Id.</u> at 13).

In Defendant's second appeal, the sole issue that Mr. Hackney

raised in his appellate brief was the denial of Defendant's motion

for a new trial.  On or about June 19, 2003, however, Mr. Hackney

filed a supplemental pleading asserting that, although he believed

the issue to be procedurally barred in light of the Fourth

Circuit's prior ruling, he agreed that the drug quantity

calculations that were made at Defendant's sentencing hearings were

erroneous and unreliable.  (# 536, Ex. 1).  Although not a part of

the record before this court, Defendant apparently filed <u>pro</u> <u>se</u>

briefs to the same effect.

Defendant now asserts that the failure of his counsel to raise

this issue in his initial brief constituted ineffective assistance

of counsel.  Defendant's Memorandum states:

> [Defendant] being pro se asserts vociferously that
> Appellate Counsel admitted that the drug quantity
> calculations were erroneous and unreliable agreeing with
> [Defendant] in a supplemental pleading Appellate Counsel
> filed to the Fourth Circuit Court of Appeals.

[Defendant's] Appellate Counsel's lone challenge on appeal after resentencing was a motion for a new trial based on alleged perjury by the Government's expert witness concerning the drug type/amount that counsel raised at the resentencing.

\* \* \*

[Defendant] asserts that although the Appeals Court affirmed the District Court's calculations of drug quantity at [Defendant's] first sentencing hearing [Defendant] had every right to challenge the drug amounts subsequently on his second appeal after a firm objection to the erroneous drug quantities in open Court at his resentencing.

(# 536 at 18-19)(footnote omitted). Defendant cites <u>United States v. Noble</u>, 299 F.3d 907, 910 (7th Cir. 2003) in support of his claim.

In <u>Noble</u>, the Seventh Circuit revisited a challenge to a relevant conduct calculation, which it had affirmed in a prior appeal. The court held that, "[g]enerally, under the law of the case doctrine, we will not revisit an issue already decided, unless we have a 'conviction at once strong and reasonable that the earlier ruling was wrong' and that the party that benefitted from the earlier ruling would not be unduly harmed." 299 F.3d at 910.

Defendant has raised this issue as a claim of ineffective assistance by his appellate counsel. To the extent that Defendant claims that Mr. Hackney's failure to raise the drug quantity issue in his appellate brief fell below the standard of reasonableness, Mr. Hackney did address the issue in a supplemental pleading, so the matter was placed before the Court of Appeals. However, the

20

Court of Appeals declined to address the drug quantity issue because it was beyond the scope of its remand. (# 500 at 2).

Thus, Defendant cannot show the requisite prejudice because the Court of Appeals would not have ruled on the merits of the issue anyway. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his appellate counsel was constitutionally ineffective.

### 3. Failure of appellate counsel to challenge the sufficiency of the evidence on Defendant's conspiracy conviction.

In Ground Four of Defendant's amended motion, Defendant asserts that his appellate counsel was constitutionally ineffective because he failed to challenge the sufficiency of the evidence concerning Defendant's conviction for conspiracy. (# 539 at 1-5). Defendant asserts that "[c]ounsel made a strategic decision not to challenge the sufficiency of the evidence concerning [Defendant's] conviction when the trial record lacks sufficient evidence to up hold [Defendant's] conviction for fifty grams (50) or more of cocaine base." (Id. at 2).

In support of his claim, Defendant asserts that:

[T]here was never an agreement between him and the government's two witnesses Marvin Garrett and Arbera Ross. Mr. Ross testified that he sold [Defendant] drugs about ten times and the amounts that he states he sold [Defendant] range[] from[] 100 grams and the rest would be ounces. (See Trial Trans. at ppg 225). These were inconsistent with his smaller amounts that he testified to at sentencing which led the Fourth Circuit to agree with [Defendant] that his testimony is unreliable. [Footnote omitted]. More importantly, this does not prove that [Defendant] conspired with Mr. Ross. This

only alleges that [Defendant] and Mr. Ross had a buyer/seller relationship.  However, Mr. Ross testified that he allegedly fronted [Defendant] drugs, but he did not state an amount that he allegedly fronted [Defendant] and there's nothing in the record to establish that Mr. Ross profited from the alleged fronting of the drugs.

Marvin Garrett's trial testimony reflected that he purchased roughly 20 grams from [Defendant].  (See Trial Trans. ppg. 245).   This also does not prove that [Defendant] conspired with Marvin Garrett.  This only establish[es] [a] buyer/seller relationship between [Defendant] and Marvin Garrett.  However, Mr. Garrett also testified that he and [Defendant] cooked crack for resale on the streets, but there is no amount on the record to establish how much [Defendant] and Marvin Garrett allegedly cooked for resale.

(Id. at 3-4).  Defendant asserts that, had his counsel challenged the sufficiency of his conspiracy conviction on appeal, the outcome would have been different.  (Id.)

In reviewing the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307 (1979).

Based upon a review of the evidence of record, including the trial testimony of Arbera Ross, Marvin Garrett, and the law enforcement officials who were involved in the surveillance of the parking lot at Roseberry Circle and in Defendant's arrest, and the videotape made during that surveillance, the undersigned proposes that the presiding District Judge **FIND** that there was sufficient

evidence to convict Defendant of conspiracy to distribute more than 50 grams of crack.

Furthermore, to the extent that Defendant has raised this claim as one of ineffective assistance of his appellate counsel, Defendant cannot show that he was prejudiced by his counsel's failure to raise the issue on appeal. Defendant was convicted of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack (Count One), but he was also convicted of one count of possession with intent to distribute crack (Count Seven) and one count of aiding and abetting the possession with intent to distribute crack (Count Ten).[4] Defendant was initially sentenced to 235 months on each of these three convictions, and those sentences were to run concurrently. Those sentences were ultimately reduced to 188 months, also to run concurrently. Because the sentences were ordered to run concurrently, Defendant's sentence was no longer as a result of his conviction on the conspiracy count than it would have been without it.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his appellate counsel was constitutionally ineffective for failing to challenge the sufficiency of Defendant's conspiracy conviction on appeal.

---

[4]     As noted, Defendant was also convicted of a firearm offense, and the 5-year sentence on that conviction was required to be run consecutively to the other sentences.

## C.   SENTENCING ERROR UNDER <u>BOOKER</u>

In Ground Three of his amended motion, Defendant asserts that his punishment violated the rule set out in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), "because his punishment was beyond the maximum prescribed based on facts not found by the jury." (# 536 at 29). Defendant claims that his case is "strikingly similar" to that of <u>Booker</u> and that, despite the fact that he is raising this issue on collateral review, the decision should be retroactively applied to his case. (<u>Id.</u> at 30-42).

On January 12, 2005, the Supreme Court decided <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applied the holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus <u>Booker</u> does not apply, unless the Supreme Court rules that it is to be applied

24

retroactively to cases on collateral review.

On November 7, 2005, the United States Court of Appeals for the Fourth Circuit held:

> The rule announced in <u>Booker</u> is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like Morris, whose convictions became final before <u>Booker</u> (or <u>Blakely</u>) was decided.

<u>United States v. Morris</u>, No. 04-7889, slip op. at 11 (4th Cir. Nov. 7, 2005).

Nine other Circuit Courts of Appeals previously reached the same conclusion and ruled that <u>Booker</u> does not apply retroactively to cases on collateral review. <u>See</u> <u>United States v. Cruz</u>, 423 F.3d 1119 (9th Cir. 2005); <u>Padilla v. United States</u>, 416 F.3d 424 (5th Cir. 2005)(per curiam); <u>Never Misses A Shot v. United States</u>, 413 F.3d 781 (8th Cir. 2005)(per curiam); <u>United States v. Bellamy</u>, 411 F.3d 1182 (10th Cir. 2005); <u>Lloyd v. United States</u>, 407 F.3d 608 (3rd Cir.), <u>cert. denied</u>, 126 S. Ct. 288 (2005); <u>Guzman v. United States</u>, 404 F.3d 139 (2nd Cir.), <u>cert. denied</u>, No. 05-5187, ___ S. Ct. ___, 2005 WL 3144193 (Nov. 28, 2005); <u>Humphress v. United States</u>, 398 F.3d 855 (6th Cir.), <u>cert. denied</u>, 126 S. Ct. 199 (2005); <u>Varela v. United States</u>, 400 F.3d 864 (11th Cir.)(per curiam), <u>cert. denied</u>, 126 S. Ct. 312 (2005); <u>McReynolds v. United States</u>, 397 F.3d 479 (7th Cir.), <u>cert. denied</u>, 125 S. Ct. 2559 (2005). Not one circuit court of appeals has decided that <u>Blakely</u> or <u>Booker</u> applies retroactively on collateral review.

25

Based on <u>Morris</u>, and the other decisions rendered by Circuit Courts of Appeals reaching the same conclusion, the undersigned proposes that the presiding District Judge **FIND** that Defendant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review.   Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no collateral relief on this claim.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.   Extension of this time

26

period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Leonard A. Sayles, Jr., and to counsel of record.

<u>December 27, 2005</u>
            Date

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge

27